339 F.2d 980
 65-1 USTC P 12,277
 In re ESTATE of Edward H. WADEWITZ, Deceased.
Robert S. CALLENDER, Wynnefred W. Callender, Camille M.
Wadewitz and First National Bank & Trust Company
of Racine, petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Nettie J. WADEWITZ, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
COMMISSIONER OF INTERNAL REVENUE, Petitioner,
v.
Nettie J. WADEWITZ, Respondent.
 Nos. 14623-14625.
 United States Court of Appeals Seventh Circuit.
 Dec. 3, 1964, Rehearing Denied in Nos. 14623, 14625, Dec. 29, 1964.
 
 Louis F. Oberdorfer, Asst. Atty. Gen., Michael K. Cavanaugh, Lee A. Jackson, David O. Walter, Attys., Dept. of Justice, Washington, D.C., for Commissioner of Internal Revenue.
 William F. Kolbe, Garth R. Seehawer, Racine, Wis., for Wadewitz' Estate and others.
 Before KNOCH, CASTLE and SWYGERT, Circuit Judges.
 SWYGERT, Circuit Judge.
 
 
 1
 The principal question presented in these petitions for review is whether the commuted value of the payments under a retirement contract is properly includable in the decedent's gross estate for federal estate tax purposes. The Tax Court held that it is includable under section 2039 of the Internal Revenue Code of 1954.[1] Its decision is reported at 39 T.C. No. 97.
 
 
 2
 On July 1, 1946, while serving as president of Western Printing and Lithographing Company of Racine, Wisconsin, Edward H. Wadewitz entered into a retirement contract with that company. The contract provided that Western was to pay Wadewitz certain annual sums for a period of fifteen years starting with either his retirement or the termination of his employment; that in the event of his retirement, the payments would continue as long as he did not engage in acts competitive with the company;[2] and further that if he died before the end of the fifteen-year period, the payments were to be made to beneficiaries named in the contract. Wadewitz died in January, 1955, while serving as president of Western. Since he had not retired, no payments were made to him under the contract. He was survived by his wife, Nettie, and a daughter, Wynnefred A. Callender, who were the the designated beneficiaries. They are presently receiving payments under the contract which had a commuted value at the time of Wadewitz's death of $148,889.67. This amount was included in the gross estate of decedent on the federal estate tax return filed by the executors of his estate. Subsequently, the executors (petitioners) filed a claim for refund of estate tax in the amount of $66,057.88. The Commissioner of Internal Revenue denied the claim. The Tax Court affirmed.
 
 
 3
 The Tax Court also decided that there is a deficiency in the income tax due from Nettie J. Wadewitz in the amount of $3,085.14 for the taxable year 1957 in respect to certain payments made to her under the contract. The petition for review filed by Nettie J. Wadewitz and the cross-petition for review filed by the Commissioner relate to issues that arise with respect to those payments only in the event we decide, as respondent unsuccessfully contended in the Tax Court, that the value of the contract is includable in the decedent's gross estate not only under section 2039 but also under sections 2033, 2036, 2037, and 2038 of the Internal Revenue Code of 1954.
 
 
 4
 Section 2039 provides that the value of any payment receivable by a beneficiary by reason of surviving a decedent under any form of contract shall be included in the gross estate of the decedent if under such contract a payment was payable to the decedent or if he possessed the right to receive such payment either alone or in conjunction with another for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death. Petitioners contend that the contract executed by Wadewitz and Western did not come within the provisions of this section because (1) the decedent did not possess a right to receive payments under the contract inasmuch as any right he may have had was forfeitable, and (2) even assuming decedent had a right to receive, he did not possess such right for one of the required periods specified in the statute.
 
 I.
 
 5
 Petitioners' first contention is based on the fact that although Wadewitz had a right to receive the payments specified in the contract if he retired, he had the right only as long as he refrained from the proscribed conduct; if he violated any of the conditions, payments stopped. Petitioners argue that the contract did not create a right to receive inuring to the decedent, but provided merely a possibility of his receiving one or more payments after retirement. They concede that both a present right to receive during the life of a decedent and the right to receive in the future upon the happening of a contingency are delineated in the statute. Their basic argument is that the right to receive in the future must be indefeasible and that Wadewitz's right to receive payments upon his retirement was defeasible under the forfeiture provisions of the contract. They say that even upon his retirement there always would have remained the possibility of the forfeiture of his rights to receive payments and that therefore decedent did not possess an absolute right to receive.
 
 
 6
 The Tax Court held that since Wadewitz never retired, it is apparent that no amounts under the contract became payable to him. The court held, however, that the decedent possessed at his death a right to receive payments.
 
 
 7
 Petitioners argue that because Wadewitz's right to future payments was contingent upon his retirement, he never possessed a choate right to receive in the future. The argument is untenable. The conditional right to receive in the future must be distinguished from the right to receive payments immediately upon the happening of the condition. Wadewitz from the beginning of the contract until his death had an enforceable right to receive future payments. By his own volition, he could have elected to retire; and by exercising his option to retire, he would have transferred his right to future payments into a right to receive immediate payments. The company had no discretion; it was obligated to pay if and when the decedent elected to retire. Wadewitz's right to receive payments was founded upon a continuing right to exercise his option to retire.
 
 
 8
 Estate of Bahen v. United States, 305 F.2d 827 (Ct. Cl. 1962), presented an analogous situation. There the decedent's payments under a deferred compensation plan were contingent upon the decedent becoming totally disabled before retirement. The decedent never became eligible for payments during his life and he died before retirement. The court held that the decedent possessed the right to receive the disability payments 'in the future if certain conditions were fulfilled, and therefore that the alternative requirement of Section 2039 is met.' The court's opinion demonstrates that the statute, supported by the applicable Treasury regulations, includes a right to possess in the future even if such right is contingent upon the happening of an event as long as the contingency is not within the control or discretion of another.
 
 
 9
 We must go one step further, however, and consider the primary thrust of petitioners' contention. Was Wadewitz's right to receive annual payments had he elected to retire 'forfeitable' after the payments stated? Petitioners argue that the decedent's right to possess was not absolute, unconditional, or indefeasible because even had Wadewitz retired and begun receiving payments, the continuation of the payments during the remaining fifteen-year period was dependent upon his not violating any of the conditions specified in the contract.
 
 
 10
 It is, of course, true that under the statute a 'right to possess' in the future must be nonforfeitable insofar as the obligator of the contracts is concerned; that is, the promise to make payments must be a continually enforceable one possessed by the obligatee. If Western could have stopped payments at its discretion, Wadewitz would not have possessed a 'right to receive,' but a mere expectancy; thus, the statutory requirement would not be satisfied. The promise of Western, however, to make payments if Wadewitz retired constituted a nonforfeitable right which the decedent possessed since Western was unable to revoke its promise unless there was activity that could be initiated only by Wadewitz. Just as Western had no discretion over the start of payments, it had no discretion over their being stopped. Wadewitz's right to payments (if he retired and refrained from the proscribed acts listed in the contract) was entirely within his control. Hence, he possessed an enforceable, nonforfeitable right to future payments.
 
 
 11
 Section 20.2039-1(b)(1) of Treasury Regulations provides in part:
 
 
 12
 The decedent 'possessed the right to receive' an annuity or other payment if, immediately before his death, the decedent had an enforceable right to receive payments at some time in the future, whether or not, at the time of his death, he had a present right to receive payments. In connection with the preceding sentence, the decedent will be regarded as having had 'an enforceable right to receive payments at some time in the future' so long as he had complied with his obligations under the contract or agreement up to the time of his death.
 
 
 13
 The regulation supports our conclusion that the Tax Court correctly determined that Wadewitz's interest in the contract constituted a 'right to receive' payments within the meaning of the statute.
 
 II.
 
 14
 We next consider petitioners' contention that even assuming Wadewitz possessed a right to receive payments within the meaning of section 2039, he did not possess the right for one of the time periods required by the statute. The Tax Court held that since Wadewitz possessed a right to receive future payments for a period of fifteen years beginning in 1946 and since the fifteen-year period had not expired at the time of his death in 1955, the decedent at his death possessed a 'right to receive' for a period which did not in fact 'end before his death' and that the factual situation conformed to one of the alternative time periods listed in the statute.
 
 
 15
 Petitioners argue that the statutory provision 'for any period which does not in fact end before his death' includes only a period in which the right commences in possession or enjoyment during the life of a decedent. Stated differently, they say that the statutory phrase includes only periods when the decedent has in fact survived the event (here, retirement) which must happen before his future interest in reduced to possession.
 
 
 16
 For more than one reason we reject petitioners' contention. First, section 2039 plainly indicates that the three time periods listed in the statute modify both alternative kinds of interest specified in the section: (1) that interest where payments are actually payable to the decedent and (2) that interest where the decedent possessed a right to receive payments. Petitioners' argument, when analyzed, would limit the three alternative time periods to a situation where a contingent right to receive has ripened upon the occurrence of the contingency into an immediate right to receive. This interpretation cannot be justified. The statute clearly covers a period during which there exists a right to receive payments in the future upon the happening of a contingency as well as for a period during which the decedent has a right to receive immediate payments.
 
 
 17
 Second, in Commissioner v. Nathan's Estate, 159 F.2d 546 (7th Cir. 1947), this court held that where trust income would go to a donor for life if a life tenant predeceased him and the donor predeceased the life tenant, the value of the donor's interest was includable in his gross estate under what is now section 2036 of the Internal Revenue Code of 1954 as a transfer of a right to income retained for a period which did not in fact end before the donor's death. The fact that the donor had not entered into an enjoyment of the rust income before his death did not mean that his conditional right to such income was not for a period which did not in fact end with his death. Although the holding in Nathan's Estate was concerned with section 2036, it has relevance to the present case since the Congressional committee reports and the Treasury regulations make reference to the interpretations developed under section 2036 for the purposes of determining whether a decedent possessed the right to an annuity or other payment for one of the described periods under section 2039.
 
 
 18
 Having determined that section 2039 is applicable in the instant situation, we need not consider the other provisions of the Internal Revenue Code to which respondents refers as alternative grounds for including the value of the contract in question in the decedent's gross estate for federal estate tax purposes. For a like reason, we need not discuss the supplemental issues presented by the remaining petitions for review since these issues depended upon our reaching the question whether Internal Revenue Code provisions other than section 2039 apply to the facts of this case.
 
 
 19
 The decision of the Tax Court is affirmed.
 
 
 
 [1]
 Section 2039 in pertinent part reads:
 '(a) General.-- The gross estate shall include the value of an annuity or other payment receivable by any beneficiary by reason of surviving the decedent under any form of contract or agreement entered into after March 3, 1931 (other than as insurance under policies on the life of the decedent), if, under such contract or agreement, an annuity or other payment was payable to the decedent, or the decedent possessed the right to receive such annuity or payment, either alone or in conjunction with another for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death.'
 
 
 [2]
 The conditions specified in the contract were:
 (a) Acceptance of employment, either directly or indirectly, with any competitor of the company;
 (b) rendering service, assistance or advice either directly or indirectly to any person, firm or corporation engaged in the same or a similar line of business as the company;
 (c) failure of the president, whenever not physically or mentally incapacitated so to do, to keep himself at all times reasonably vailable for consultation by the officers and directors of the company;
 (d) employment by the president, without the permission in writing of the company, of any other employee of the company;
 (e) allowance by the president of the use of his name by or in any competitive business.