**Carrie KRAMER and Julius Kramer, Executors of the Estate of Abraham Kramer, Deceased**

v.

**The UNITED STATES.**

No. 285–66.

United States Court of Claims.

Feb. 14, 1969.

**1364**

Richard Katcher, Cleveland, Ohio, attorney of record for plaintiffs. Herbert B. Levine, Cleveland, Ohio, of counsel.

Philip R. Miller, Washington, D. C., with whom was Asst. Atty. Gen., Mitchell Rogovin, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION.

NICHOLS, Judge.

Plaintiffs, Carrie and Julius Kramer, are executors of the estate of Abraham Kramer. They are claiming an estate tax refund because they say the Commissioner of Internal Revenue (hereinafter referred to as the Commissioner)' wrongfully included in the decedent's gross estate the value of the right of decedent's widow to receive weekly payments from his employer after his death. The parties have stipulated the facts. We agree with the plaintiffs.

In 1946, Abraham Kramer, the decedent, organized the Kramer Supply Company, a wholesale plumbing business. He originally owned 20.25 shares of the 250 shares of stock issued, and his son and son-in-law owned the remaining shares. Later, Mr. Kramer transferred his shares to a daughter and his son. Decedent, his wife and a son-in-law were on the first Board of Directors, and decedent was the first president of the Company. He remained in that position until November 15, 1956, when he entered into a written agreement with the Company. It recited that it was essential to the Company to have the benefit of Mr. Kramer's services during the forthcoming years. It provided in part:

(1) The Company does hereby employ the said Mr. Kramer as General Manager at an annual salary of $12,000.00 per year.

(2) In the event of illness and/or in the event that due to any circumstances which may make it impossible for Mr. Kramer to continue to act as General Manager, the Company agrees that he shall remain with it as an Advisor and Counsellor and to assist the officers and Employees in formulating plans and programs for the continuation of the business, for the remain-

der of his life. That during such services being rendered, he shall receive an annual salary of $12,000.00, payable in regular weekly installments.

(3) In the event of Mr. Kramer's decease, and while serving the Company either under the provisions of Paragraph (1) or (2), and in the event his wife, Carrie Kramer, shall survive him, then the Company agrees that she shall receive as compensation the sum of $150.00 per week, as long as she lives.

The agreement was subject to ratification by the Board of Directors and was approved December 1, 1956. The Board consisted of Mr. Kramer and the son and son-in-law above mentioned. Defendant says decedent contracted with himself. He did sign for the Company, but in his capacity as President, and, as noted, the agreement was subject to the approval of the Board of Directors. Mr. Kramer, an Ohio resident, died July 7, 1961, while serving as General Manager under paragraph 1 of the Agreement, and until four days before his death, he had worked in that position seven hours a day, five and one-half days a week. Decedent had no other arrangements or agreements with the Company concerning payments to him or his survivors at his death. Under Mr. Kramer's will his wife was bequeathed the residue of his estate "for the term of her natural life" and the remainder at her death was to be divided among his children.

After Mr. Kramer's death, his wife began receiving $150 per week from the Company pursuant to paragraph 3 of the agreement. Plaintiffs filed an estate tax return but did not include in decedent's gross estate the value of Mrs. Kramer's right to receive payments for the remainder of her life. Upon audit the commuted value of the widow's right to receive the payments was included in decedent's gross estate under Section 2039 of the Internal Revenue Code of 1954. (All references are to the 1954 Code unless otherwise specified.) Plain-tiffs paid the deficiency, after which they filed a claim for refund of the tax attributable to the inclusion of the value of Mrs. Kramer's right to the payments. The refund was disallowed.

Mrs. Kramer's income tax returns for 1962 and 1963 included the $150 per week payments in her gross income. After plaintiffs received notice of the inclusion of the value of the payments in decedent's gross estate, Mrs. Kramer claimed an income tax refund under Section 691(c) which was allowed. Under Section 6501 the statute of limitations on Mrs. Kramer's 1962 and 1963 income tax years has now run against the defendant. The defendant urges that the commuted value of Mrs. Kramer's right to receive $150 per week was includable in decedent's gross estate under Section 2039. This section, captioned "Annuities", provides:

(a) GENERAL.

The gross estate shall include the value of an annuity or other payment receivable by any beneficiary by reason of surviving the decedent under any form of contract or agreement * * * if, under such contract or agreement, an annuity or other payment was payable to the decedent, or the decedent possessed the right to receive such annuity or payment, either alone or in conjunction with another for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death.

(b) AMOUNT INCLUDIBLE.

Subsection (a) shall apply to only such part of the value of the annuity or other payment receivable under such contract or agreement as is proportionate to that part of the purchase price therefor contributed by the decedent. For purposes of this section, any contribution by the decedent's employer or former employer to the purchase price of such contract or agreement * * * shall be considered to be contributed by the

decedent if made by reason of his employment.

There have been very few cases that have dealt with Section 2039, but a reading of them indicates that all of the requirements of the section must be met for the payments such as those received by Mrs. Kramer to be includable in a decedent's gross estate. See Bahen v. United States, 305 F.2d 827, 158 Ct.Cl. 141, (1962). There must be an "annuity or other payment receivable by any beneficiary by reason of surviving the decedent" and the payments under subsection (b) must be by reason of the decedent's employment. We think that the $150 per week paid to Mrs. Kramer constituted "annuity or other payment" which was paid by reason of the decedent's employment, and under paragraph 3 of the agreement she had to survive Mr. Kramer to receive the payments.

An annuity or other payment also must have been payable to the decedent or he must have possessed the right to receive the payment. It is this requirement that is in issue in this case, and we do not believe that it has been met. Under the agreement the only payments Mr. Kramer had a right to receive were in the form of compensation for services rendered. There is nothing in the agreement or stipulated facts that leads us to believe anything different was intended. In Bahen, supra, the issue of whether or not salary was meant to be included in the definition of "other payment" was discussed. In that case, the decedent's beneficiary was to receive at his death an amount equal to three months' salary of the deceased. The Government had argued that "other payment" included salary, but we said:

> * * * Since employees normally receive salary or wages, defendant's interpretation would effectively obliterate, for almost all employees, the express requirement in Section 2039 of "an annuity or other payment" to the decedent. (Bahen, 305 F.2d p. 834, p. 154 of 158 Ct.Cl.

In considering this same issue in Estate of Fusz, 46 T.C. 214 (1966), the Tax Court approved of our reasoning in Bahen and concluded that salary was not included in the meaning of "other payments" but that "the phrase 'other payment' is qualitatively limited to post-employment benefits, which at the very least, are paid or payable during decedent's lifetime." Fusz, supra, p. 218.

The defendant argues that Mr. Kramer's agreement with the Company was really a retirement arrangement. We cannot agree. Because the parties chose to stipulate the facts in this case, we have a rather sparse record on which to base our decision, but we find in it nothing to indicate that this was a scheme to pension off Mr. Kramer while at the same time avoid the impact of Section 2039. The facts we do have indicate the opposite. Mr. Kramer worked seven hours a day, five and one-half days a week as General Manager of the Company which would hardly appear to be a retirement schedule. The defendant argues that as part of the retirement process, the decedent had even turned over stock control of the corporation. But the facts as stipulated show that decedent never did have stock control of the Company; the most he ever owned was 20.25 shares out of the 250 shares issued.

Under paragraph 2 of the agreement decedent was to serve as "Advisor and Counsellor" if it became impossible for him to perform the duties of General Manager. Defendant considers that paragraph a disability arrangement providing for contingent payments similar to the disability payments the decedent in the Bahen case had a contingent right to receive. We held in that case that contingent rights to receive payments that qualified as "other payments" came within the meaning of "possessed the right to receive" of Section 2039 and their value was includable in the decedent's gross estate. Bahen v. United States, supra, 305 F.2d pp. 830–832

pp. 147–150 of 158 Ct.Cl. Thus, the fact that Mr. Kramer died while serving under paragraph 1 would not affect the significance of paragraph 2, even though it never became operative, were we to find those payments qualified as "other payments" which he possessed the right to receive. Paragraph 2 of the agreement provided that plaintiff was to receive his salary "during such services [those of Advisor and Counsellor] being rendered."

Because of Mr. Kramer's interest in and close ties to the Company and its management, the defendant argues that he would have been expected to remain available for advice anyway, and thus the payments under paragraph 2 were really retirement or disability payments. But we do not find defendant's argument persuasive. Again we have only the stipulated facts—but they reveal no basis for defendant's argument. It seems just as reasonable to conclude from this record that decedent's advice might have been preempted by others who would have been willing to have paid decedent for it had the Kramer Supply Company been getting it for nothing.

The result in this case turns entirely on the stipulation and under different stipulated or proven background facts, an identical contract might have different tax consequences. Stipulations are often unsatisfactory materials for decision because it is improbable that counsel will ever agree on all the facts a judge would consider material. Often stipulations reflect the will of the parties that he build bricks without straw. On the other hand, the need to hold the cost of litigation within bounds, and to keep court dockets moving, demand that litigation be disposed of on submitted stipulations if at all possible. Here, defendant wants us to infer from the stipulated family relationship that the agreement really imports something different from what it says. It invokes the presumption in favor of the Commissioner's decision and reminds us that the burden of proof is on plaintiff. However, the submission via stipulation, of a contract, without more, satisfies the burden of establishing that the parties agreed to what the contract says. One who intends to argue that there were side agreements, oral, implied, or merely understood, should not stipulate a basic contract alone. There are all sorts of families, and among those who are close by blood or marriage, every relationship may be found from love and affection to bitter hostility. There is no stipulation into which category these people fell. There is nothing in the stipulated facts to disprove that Mr. Kramer exacted the agreement precisely because he mistrusted the love and affection of his kin as assuring support for him in his twilight years.

We think paragraph 2 of the agreement means that on the contingency contemplated Mr. Kramer was to assist the officers and Employees in formulating plans and programs for the continuation of the business, to the extent he was able and such assistance was needed. We have no clue how much it would have been needed. We know nothing about the character of the business which would show whether this responsibility was light or onerous. Having no facts to warrant any other view, we can only suppose it was worth the $12,000 per annum consideration that was proposed. *Cf.* Tasty Baking Co. v. United States, 393 F.2d 992, 184 Ct.Cl. 56 (1968), in which we held it to be presumed that the future loyal adhesion of officers and employees was worth the value of the property placed in a pension trust to obtain it. A majority of us do not believe that Mr. Kramer could have advised and consulted for an hour and then have told the officers and employees to be gone, though still seeking advice and consultation. Such behavior, we think, would have breached the agreement and forfeited the $12,000 honorarium. If the parties had intended to pay $12,000 for little or nothing they could just as well have omitted paragraph 2 and allowed Mr. Kramer, though sick, to hold the title of General

Manager until his decease, and by doing so they would have avoided any issue under Section 2039.

The stipulation recites that there was no other agreement between decedent and the Company that provided for payment of any amounts to the decedent or to anyone else by reason of surviving him. This is somewhat ambiguous, and may not mean to say there was no contract or agreement at all between decedent and the Company prior to the agreement set forth. At any rate, he was employed as President. It is all the more impossible to draw inferences beyond the text of the writing itself, when one does not know what it replaced, or what claims, demands, or choses in action Mr. Kramer then had against the Company, other than the moral ones recited in the preamble.

In re Wadewitz's Estate, 339 F.2d 980 (7th Cir.1964) affirms the Tax Court, 39 T.C. 925, in holding that a somewhat similar arrangement was covered by Section 2039. Decedent had an agreement with his Company calling for payment of specified sums for 15 years, to him beginning with his retirement, to his wife and daughter if he died before retiring, and if he died after retirement but before the full sums were paid, the balances were to go to the wife and daughter. Both courts considered that Section 2039 required inclusion of the unpaid balance in the gross estate. There were clauses prescribing what decedent was to do after retiring; he was to "keep himself reasonably available for consultation" but mostly the clauses sought to bar him from competing with the Company or aiding others to do so. The agreement is called a "retirement contract," 339 F.2d at p. 981. Both courts refer to our *Bahen* case with approval and there is no suggestion of any conflict. It is therefore clear that neither court gave any serious consideration to the possibility that the post-employment payments were primarily for affirmative services during the "retirement" period and evidently this was not urged. In *Wadewitz*, as here,

facts were presented by stipulation, precluding any comparison in depth of the background circumstances. As we see no reason to call the paragraph 2 period in Mr. Kramer's contract a post-employment period, as the word "retirement" is not used, and as apparently the parties contemplated that Mr. Kramer would render services worth $12,000, we do not see *Wadewitz* as an applicable precedent.

■ We hold that Section 2039 does not require inclusion of the commuted value of the annuity in the gross estate, reiterating that this result turns on the fact as stipulated, not on the facts as suspected, speculated, or inferred by the defendant. Any court, construing a similar contract, will not regard this case as a precedent if it appears that the services to be rendered were nominal or *pro forma* or that the prescribed payments were really a retirement annuity.

■ The defendant argues that even if the payments to Mrs. Kramer are not includable in the decedent's gross estate under Section 2039, they are includable under Sections 2036(a) (2), 2038(a) (1) and/or 2033. In *Estate of Fusz, supra*, a case similar to the instant one, the Government did not argue and the Tax Court expressly left open, the question of whether or not any provisions other than Section 2039 were applicable. Section 2036(a) (2), as amended, 76 Stat. 1052, provides:

* * * the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer * * * under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

* * * * * *

(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

* * * * * *

Section 2038(a) (1) provides for inclusion in the value of the gross estate all property:

\* \* \* \* \* \*

To the extent of any interest therein of which the decedent has at any time made a transfer \* \* \* where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power \* \* \* by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, \* \* \*.

Both provisions require a transfer by the decedent. In Worthen v. United States, 192 F.Supp. 727 (D.Mass.1961), a case decided under similar sections of the 1939 Code, the court found that the decedent's promise of future employment provided the consideration for the promise of payment of post-death benefits by the employer and that the arrangement was in substance a transfer to the one who would benefit from the payment. Other cases have found a transfer in a similar manner. Davis v. Commissioner, 27 T.C. 378 (1956); Estate of Higgs v. Commissioner, 12 T.C. 280 (1949), rev'd on other grounds, 184 F.2d 427 (3rd Cir.1950). We may assume *arguendo* that decedent's employment here did provide the consideration for the transfer and that, based on the reasoning in *Worthen*, there was a transfer here. But Section 2036(a) (2) also requires that decedent retain the right to designate who would possess or enjoy the benefits and Section 2038(a) (1) requires that the decedent retain the power to alter, amend, revoke or terminate the enjoyment of the property transferred. Defendant lumps the requirements of these two sections together and argues that the decedent, because of his relationship to the Company, could have "bargained" with it for a change in the beneficiary or amount of payments, which would be enough for inclusion of the proceeds in his gross estate under these sections. In short, there is noth-ing in the agreement itself that would permit decedent to change the beneficiary or the amount of the payments. The agreement was subject to ratification by the Board of Directors, which occurred, and that was the only condition placed on it. Nowhere in the agreement do we find that decedent could have altered it at all. This is not a situation where decedent reserved the right to change the beneficiary or to renegotiate the amount of payments, and the defendant has again relied on assumptions not in the stipulation. The source of decedent's supposed power to renegotiate lies in the love and affection defendant postulates. There is no stock control; decedent is not shown to be a creditor. If he refused to perform, decedent would simply forfeit his own rights as well as those of his beneficiary, not change them. He had no other leverage shown by the stipulation.

■ If the value of Mrs. Kramer's right to receive $150 per week is not includable in decedent's gross estate under any other section then the defendant urges that it should be included in decedent's gross estate under Section 2033. This section taxes all property to the extent the decedent had an interest therein at the time of his death. The defendant argues that at the time of decedent's death he was performing services for which an annuity was to be paid and he could have had the commuted value of the annuity turned over to him, therefore, he died with an interest in the property. Again the defendant assumes facts not in the record. The decedent's interest in the employment contract ceased at his death. He was entitled to be paid a salary as long as he was employed by the Company but nothing beyond that. Decedent had no right to the $150 per week payments and no control over them. As the Tax Court said in Estate of Wadewitz, *supra*, at p. 933 of 39 T.C.:

\* \* \* It is well established, \* \* \* that where a decedent holds only a property interest which terminates at his death, \* \* \* such an

interest cannot be reached by section 2033 * * * and is not includable thereunder in the decedent's gross estate. * * *

We think that the interest Abraham Kramer had in his employment agreement was terminable and therefore the property also is not includable under Section 2033.

The defendant claims that if the value of Mrs. Kramer's payments is not included in decedent's gross estate then it is entitled to recoup the income tax benefits Mrs. Kramer received in 1962 and 1963 by deduction from her gross income the estate tax paid on the value of the $150 per week payments. Section 691(a) subjects to income tax income in respect of a decedent when that income is paid to a recipient regardless of the fact that the right to receive the income was subjected to estate tax through inclusion of it in the estate of the decedent who produced the income. Section 691(c) however, permits a deduction from the recipient's income of the amount of estate tax incurred by the inclusion in the decedent's gross estate of the value of the right to receive the income.

■ Mrs. Kramer included in her gross income for 1962 and 1963 payments of $150 per week. She did not claim a Section 691(c) deduction for the amount of estate tax attributable to the value of the right to receive the payments because the value of the right to receive the $150 per week had not been included in decedent's gross estate. After a deficiency in the estate tax was assessed and plaintiffs paid the additional estate tax, Mrs. Kramer claimed refunds of the income taxes she paid on the $150 per week in 1962 and 1963 which were allowed. Since the allowance of the refunds of Mrs. Kramer's income tax was incorrect because the value of the payments to Mrs. Kramer was not includable in the decedent's gross estate and since the statute of limitations for the income tax years of 1962 and 1963 has now run, the defendant is invoking the

doctrine of equitable recoupment. This doctrine is designed to prevent the injustice that would result from applying the statute of limitations in certain cases. But because it upsets the policy underlying the statute of limitations, it is narrowly applied. Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 67 S. Ct. 271, 91 L.Ed. 296 (1946).

Defendant relies on Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937), to support its claim for recoupment. In that case, the decedent had left his property in trust and the trustee was instructed to pay the sole beneficiary the net income upon request. The trustee paid income tax on the trust income which should have been paid by the beneficiary. In a suit by the trustee for a refund the Supreme Court allowed a recoupment of the income tax owed by the beneficiary against the refund sought by the trustee although the statute of limitations had run against the Government on its claim against the beneficiary. The Court found that the trustee and the sole beneficiary had identical interests. It said at pp. 535–538, at pp. 853–854 of 57 S.Ct.:

> * * * [A]ny recovery in this action will be income to the beneficiary, and will deprive the government of a tax to which it is justly entitled and enable the beneficiary to escape a tax which she should have paid. * * * Since in equity the one taxpayer represents and acts for the other, it is not for either to complain that the government has taken from one with its right hand, when it has, because of the same error, given to the other with its left.

This court in Sewell v. United States, 19 F.Supp. 657, 663, 85 Ct.Cl. 512, 524–525 (1937), refused to allow equitable recoupment by the Government on the identity of interest issue. In that case the wife of the decedent was entitled to a portion of the income of his estate for life and the balance was to be accumulated and distributed to others after her death. When the estate sought a refund

of the income taxes paid by it but which should have been paid by the widow, this court distinguished Stone v. White and refused to allow a recoupment by the Government claiming that neither the interests of the two taxpayers nor the fund which should pay the tax were the same. The court found that

> * * * the remainderman has been injured by the failure of the trustees to take a deduction and the beneficiary has been benefited to the extent of the tax paid by the trustees out of the interest of the remainderman. In the *Stone case*, * * * the beneficiary was entitled to the whole net income * * * of the estate of which she was the sole beneficiary. In the instant case, the beneficiary was only entitled to part of the net income and the balance was retained in the estate for the benefit of the remainderman. It is obvious that the payment of the tax by the trustees would impair the fund ultimately to be received by the residuary legatee.

Mrs. Kramer was bequeathed the residue of decedent's estate "for the term of her natural life," and the remainder at her death was left to their children. Under Ohio law she is not considered the sole residuary legatee, but a life tenant with an unlimited power to dispose of the proceeds. She is a trustee or quasi-trustee of the property. She is bringing this suit in her capacity as co-executor of the estate and the residuary estate will benefit from the recovery of the estate taxes. Mrs. Kramer's personal income benefitted from the income tax refund, but other persons, *i.e.*, the remaindermen have a vested interest in the residuary estate. If Mrs. Kramer were the sole beneficiary then Stone v. White would be applicable and the defendant would be entitled to an equitable recoupment. Here, however, there is a possibility that the remaindermen will also benefit from the estate tax refund, therefore the doctrine of equitable recoupment is not applicable.

The plaintiffs are entitled to a refund of the estate tax, plus interest, attributable to the inclusion of the commuted value of Mrs. Kramer's $150 per week payments in the decedent's gross estate. They are also entitled to a refund under Section 2053 of estate tax plus interest based on the amount of fees and other expenses connected with this litigation to the extent permitted by the laws of Ohio and to the extent they are actually paid. Judgment is entered accordingly with the amount of recovery to be determined in accordance with Rule 47(c) of this court.

DAVIS, Judge (dissenting):

Although this case was stipulated, the claimants still bear the double burden—first in their capacity as plaintiffs in a refund suit, and second as taxpayers seeking to overturn a determination of the Internal Revenue Service—of proving that they are entitled to recover. See Boehm v. Commissioner of Internal Revenue, 326 U.S. 287, 293–294, 66 S.Ct. 120, 90 L.Ed. 78, 166 A.L.R. 708 (1945). Gaps in the stipulation should not be filled in their favor. Under this standard, they have failed to persuade me that they fall outside of Section 2039 of the Internal Revenue Code of 1954.

The only real issue is whether the payments to be made to Mr. Kramer under the second paragraph of the Memorandum of Agreement with the Company constituted "an annuity or other payment [which] was payable" to him or which he "possessed the right to receive" for his life. In Estate of Bahen v. United States, 305 F.2d 827, 834–835, 158 Ct.Cl. 141, 154 (1962), we held that this term "an annuity or other payment" does not include "the decedent-employee's regular salary." See also Estate of Fusz, 46 T.C. 214 (1966). Here the court interprets the $12,000 payable to Mr. Kramer "[i]n the event of illness and/or in the event that due to any circumstances which may make it impossible for [him] to continue to act as General Manager" as equivalent to the "regular salary" of which we spoke in *Bahen*. On the other hand, I see these payments as "post-employment benefits" to

Mr. Kramer (Estate of Fusz, *supra*, 46 T.C. at 218), close kin to an ordinary retirement annuity or retirement payment.

The Memorandum of Agreement makes it absolutely plain that these payments were to be made after the decedent had stopped being general manager (for which he was also being paid $12,000 per year), and that he was nevertheless to "remain" with the company for "the remainder of his life." His illness was expressly contemplated, as were "any circumstances which may make it impossible for Mr. Kramer to continue to act as General Manager." In other words, he could be totally disabled for active participation in the business but would still continue to receive $12,000 each year for the rest of his life.[1]

True he was to be "an Advisor and Counsellor" and was "to assist the officers and Employees in formulating plans and programs for the continuation of the business." Also, he was to receive his $12,000 "during such services being rendered." But for me the significant aspect of the agreement is that nothing whatever was specified as to how much advice and counsel he was to give each year—or how often. Unlike the retiree in In re Estate of Wadewitz, 339 F.2d 980, 982 n.2 (C.A. 7, 1964), our decedent did not even promise to "keep himself at all times reasonably available for consultation by the officers and directors of the company." If this were somehow to be implied, there is no indication that the company was expected to call upon him for any substantial amount of advice. Perhaps a day or two a year of *pro forma* consultation would be all; since this was a small family corporation, my guess is that, especially if the *paterfamilias* fell ill, no one anticipated more than a minimal exchange, just enough to say that "services" were "being rendered" during the year.

In essence, the agreement, as phrased, was clearly open to being used as a device for paying Mr. Kramer $12,000 so long as he lived even though, because of the state of his health or his age, he could do very little for the firm. This was in fact a "post-employment benefit", not a "regular salary" such as was paid him as general manager. I repeat that we should read the *lacunae* in the contract and the stipulation against the taxpayers, not against the Government as the court prefers.

What the court does in this case is contrary to what was actually held in In re Estate of Wadewitz, *supra*, though the precise issue appears not to have been raised in that case and there is therefore no direct conflict. But I find it *significant* that in that instance all assumed that the payments were not "regular salary" within the meaning of *Bahen.* If the rule laid down for Mr. Kramer were generalized, it would afford an easy device by which businesses could actually pension off their officers while protecting the latter's estates by exacting amorphous undertakings from them to give "advice" when called upon. The court's stress on the stipulated nature of the present case, and the adverse inferences it draws from the Government's willingness to stipulate, gives me hope that we are not declaring any such general proposition.[2]

LARAMORE, J., joins in the foregoing dissenting opinion.

1. The Agreement gives no hint of the other "circumstances" which might make it *"impossible* for Mr. Kramer to continue to act as General Manager" (emphasis added), and the stipulation gives us no light. It is fair to assume that these other "circumstances", making it "impossible" for him to continue as general manager, would be comparable to a disabling illness.

2. In the view I take, I need not, and do not, consider the other questions on which the court passes.