**LOCKHEED SANDERS, INC.**

v.

**UNITED STATES of America.**

**Civ. No. 93–366–JD.**

United States District Court,
D. New Hampshire.

Aug. 24, 1994.

Peter T. Beach, Sulloway & Hollis, Concord, NH, and Christopher S. Rizek, and Frederick H. Robinson, Miller & Chevalier, Chartered, Washington, DC, for plaintiff.

T. David Plourde, Patrick M. Walsh, Asst. U.S. Attys., U.S. Attorney's Office, Concord, NH, and Scott H. Harris, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

## ORDER

DiCLERICO, Chief Judge.

The plaintiff, Lockheed Sanders, Inc. ("Lockheed"), brought an action against the United States to recover federal income taxes and interest for the taxable years ending June 30, 1965, 1968, 1974, 1977, 1978, and 1982. Jurisdiction is based upon 28 U.S.C.A. § 1346(a)(1) (West 1993). The United States moves for dismissal or, in the alternative, for summary judgment (document no. 13). The parties agree that the motion should be treated as a motion for summary judgment. For the following reasons, the court denies the United States' motion.

*Background*

Century Data Systems, Inc. ("CDS") was incorporated and began its operations in 1968. Its accounts were maintained on a calendar year basis and it filed tax returns for the calendar years ending December 31, 1968 and 1969.

Prior to April 3, 1972, California Computer Products, Inc. ("Calcomp") owned approximately 65% of CDS's stock. CDS filed a six-month return for the tax period ending June 30, 1971, and joined Calcomp in filing consolidated tax returns for the fiscal years ending June 30, 1971, and June 30, 1972. Other parties to the consolidated tax returns included the wholly owned subsidiaries of Calcomp. Calcomp acquired more than 80% of CDS's stock on April 3, 1972. On December 12, 1974, CDS was liquidated and all its assets and liabilities were transferred to and assumed by Calcomp.

Concerned that Calcomp did not own the requisite 80% of CDS's stock entitling CDS to join in the consolidated returns, the Internal Revenue Service ("IRS") contacted Calcomp.[1] In an October 11, 1972, letter sent to the IRS, Charles H. Sword, senior vice president and secretary of Calcomp, stated that as of that date, Calcomp "owns, as the shareholder of record, 93.7% of the outstanding stock of its affiliate, [CDS]" and "[i]t was determined that for its tax return for the fiscal year ended June 30, 1971, Calcomp had 98% of the voting power of the Common Stock (the only class of stock) of [CDS]." Appendix, Exhibit C. However, upon reviewing the 1972 consolidated tax return, an agent for the IRS discovered that Calcomp owned less than 80% of CDS's stock.

Donald C. Alexander, an IRS commissioner, issued a notice of deficiency to CDS on December 23, 1975, and used as the taxable years the fiscal years ending June 30, 1970, June 30, 1971, and the short-year ending March 31, 1972, to determine the deficiency. Appendix, Exhibit B. CDS and Calcomp petitioned for redetermination of the defi-

---

**1.** 26 U.S.C. § 1501 *et seq.* sets forth the rules governing when corporate taxpayers can file consolidated returns. Both parties now agree that

CDS was not entitled to join in the consolidated return.

ciency on March 15, 1976. *Id.* In this petition, they did not address the issue that the commissioner used the incorrect taxable years in his notice of deficiency. *See id.* In June 1980, CDS and Calcomp filed an amended petition and contended for the first time that the commissioner had used the wrong taxable years in the notice of deficiency. Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment, Exhibit 2.

In 1983, the United States Tax Court found that it was without jurisdiction to redetermine the deficiency because the notice of deficiency used the incorrect taxable years. *Century Data Systems, Inc. v. Commissioner,* 80 T.C. 529, 537, 1983 WL 14807 (1983). The Tax Court stated that "[t]he proper procedure is for the [commissioner] to issue a new notice of deficiency within the applicable period of limitations for the proper taxable year." *Id.* The commissioner issued a second notice of deficiency in November 1983.

In 1986, the Tax Court found that the statute of limitations barred the assessment of deficiencies by the commissioner. *Century Data Systems, Inc. v. Commissioner,* 86 T.C. 157, 171, 1986 WL 22082 (1986). The commissioner had argued that because of an alleged affirmative misrepresentation contained in the Sword letter, Calcomp and CDS were equitably estopped from asserting that the statute of limitations barred the commissioner from assessing a deficiency. The court found that the Sword letter only concerned the issue of whether CDS could join in the consolidated returns and did not address the question of the correct taxable years. *Id.* at 166. The court also observed that the commissioner did not rely on the Sword letter because he filed his initial notice

of deficiency before the statute of limitations expired. *Id.*[2]

In February 1980, Lockheed acquired 100% of Calcomp's stock and in 1983 Calcomp was liquidated and all its assets and liabilities were transferred to and assumed by Lockheed.

In this action, the plaintiff seeks to remove CDS from the consolidated returns and thereby "free up" credits and net operating loss deductions: carrybacks and carryforwards.[3] The United States requests that the court utilize one of three equitable doctrines to prevent the plaintiff from recovering.

## Discussion

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The burden is on the moving party to establish the lack of a genuine, material factual issue, and the court must view the record in the light most favorable to the nonmovant, according the nonmovant all beneficial inferences discernable from the evidence." *Snow v. Harnischfeger Corp.,* 12 F.3d 1154, 1157 (1st Cir.1993) (citations omitted). Once the moving party has met its burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial[,]" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (citing Fed.R.Civ.P. 56(e)), or suffer the "swing of the summary judgment scythe." *Jardines Bacata, Ltd. v. Diaz–Marquez,* 878 F.2d 1555, 1561 (1st Cir. 1989). "In this context, 'genuine' means that the evidence about the fact is such that a

---

**2.** The Tax Court further rejected the commissioner's claim that CDS had an affirmative obligation to inform the commissioner that the initial notice of deficiency was defective. *Id.* at 168–70. The Tax Court observed that the commissioner did not contend that either CDS or Calcomp had actual knowledge of the problem with the notice prior to the expiration of the statute of limitations. Rather, the commissioner contended that CDS and Calcomp had constructive knowledge of the defect. *Id.* at 168. The court, however, placed the blame for the failure to detect the

deficiency in the notice on the IRS agent who failed to examine CDS's books or previous returns to determine the correct taxable years. *Id.* at 170.

**3.** In general, net operating losses occur when a taxpayer's deductions exceed its gross income. 26 U.S.C.A. § 172(c) (West Supp.1994). Section 172 allows the taxpayer to offset income in certain previous and future years with losses from other years. 26 U.S.C. § 172.

reasonable jury could resolve the point in favor of the nonmoving party, *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; 'material' means that the fact is one 'that might affect the outcome of the suit under the governing law.' " *United States v. One Parcel of Real Property,* 960 F.2d 200, 204 (1st Cir.1992) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510).

## I. Doctrine of Equitable Recoupment

The government urges the court to apply the doctrine of equitable recoupment to prevent the plaintiff from escaping taxation and receiving a windfall. According to the government, CDS's income has not been taxed because it was offset by losses from other corporations included in Calcomp's joint return. If CDS is now allowed to remove its income from the consolidated return, CDS will not have to pay tax on that income because the government is barred by the statute of limitations from assessing a deficiency. In the government's view, it is entitled to invoke the doctrine of equitable recoupment to prevent the plaintiff from prevailing in this action. Application of the defense would permit the government to recoup an amount equal to that which the plaintiff seeks by way of a refund.

The plaintiff counters that the government's reliance on the doctrine of equitable recoupment is misplaced. It asserts that the court must apply the doctrine narrowly because a broad application would eviscerate the statute of limitations. According to the plaintiff, the government has failed to establish the two prerequisites for application of the doctrine: (1) that the plaintiff and CDS have a sufficient identity of interest and (2) that the plaintiff's claim for a refund and the government's recoupment claim arise from the same transaction. Moreover, the plaintiff asserts that applying the doctrine would not be equitable because it would permit the government to benefit from its own negligence in failing to issue a notice of deficiency using the correct taxable years.

"[A] party litigating a tax claim in a timely proceeding may, in that proceeding, seek recoupment of a related, and inconsistent, but now time-barred tax claim relating to the same transaction." *United States v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548 (1990); *see also O'Brien v. United States,* 766 F.2d 1038, 1048 (7th Cir.1985) (stating doctrine of equitable recoupment available to taxpayer and government); Jacob Mertens, Jr., Mertens Law of Federal Income Taxation §§ 50.67, 58A.64, 60.01, 60.06 (1993 and Supp.1994). " 'Recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded.' " *Rothensies v. Electric Storage Battery Co.,* 329 U.S. 296, 299, 67 S.Ct. 271, 272, 91 L.Ed. 296 (1946) (quoting *Bull v. United States,* 295 U.S. 247, 262, 55 S.Ct. 695, 700, 79 L.Ed. 1421 (1935)).

The Supreme Court first recognized the doctrine in *Bull* and in *Stone v. White,* 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937). In *Bull,* after the commissioner assessed a deficiency, an executor paid estate tax on money from a partnership distribution to the decedent. 295 U.S. at 252, 55 S.Ct. at 696–97. The commissioner later notified the estate that the distribution should have been treated as income. *Id.* at 252–53, 55 S.Ct. at 696–97. The commissioner did not however, give the estate credit for the estate tax and the executor's claim for a refund for the estate tax was barred by the statute of limitations. *See id.* at 253, 55 S.Ct. at 697. While not specifically using the term equitable recoupment, the Court held that the executor was entitled to offset the income tax deficiency by the estate tax overpayment. *Id.* at 263, 55 S.Ct. at 701.

In *Stone,* the taxpayers, testamentary trustees of an estate with a sole beneficiary, paid a deficiency assessed against them for income of the trust. 301 U.S. at 533, 57 S.Ct. at 852. After the statute of limitations had expired for collection from the beneficiary, the Court determined in a different case that the income from such trusts was taxable to the beneficiary and not the trustees. *Id.* The trustees brought an action for a refund asserting the tax they paid was improper. *Id.* at 534, 57 S.Ct. at 852. The government argued that the tax the sole beneficiary should have paid exceeded the amount sought by the trustees and any recovery by

the trustees would inure only to the sole beneficiary of the trust. *Id.* The Court permitted the government to use the doctrine of equitable recoupment as a defense to the income tax refund claim made by the trustees. *Id.* at 538–39, 57 S.Ct. at 854–55. It stated that if the doctrine were not applied, the beneficiary would escape taxation and deprive the government of taxes that were due. *Id.* at 535, 57 S.Ct. at 852–53. Observing that the trustees maintained the trust only for the benefit of the sole beneficiary and thus an identity of interest existed between the trust and the beneficiary, the Court stated that no injustice was being done by allowing the government to use equitable recoupment as a defense. The Court also noted that the government should not be penalized for an error where the tax law was in a state of flux due to judicial declarations. *Id.* at 537–38, 57 S.Ct. at 853–54.

Recognizing the potentially expansive reach of this doctrine, the Supreme Court expressly limited the holding of *Bull* and *Stone* to the facts of those cases. *Rothensies,* 329 U.S. at 301, 67 S.Ct. at 273; *see also United States v. Nordic Village Inc.,* 503 U.S. 30, ——, 112 S.Ct. 1011, 1017, 117 L.Ed.2d 181 (1992) (citing *Dalm,* 494 U.S. at 608, 110 S.Ct. at 1368); *Ford v. United States,* 276 F.2d 17, 23, 149 Ct.Cl. 558 (1960) (observing that doctrine not flexible, but rather strictly limited in scope). The Court observed that an expansive interpretation of the doctrine would undermine statutes of limitations, leaving the tax system without "a day of final settlement." *Rothensies,* 329 U.S. at 301–302, 67 S.Ct. at 273–74. "Every assessment of deficiency and each claim for refund would invite a search of the taxpayer's entire tax history for items to recoup." *Id.* at 302, 67 S.Ct. at 274. Such an interpretation would also "tempt the equity-minded judge to seek for ways of relief in individual cases" because statutes of limitations occasionally create benefits or hardships for either the taxpayer or the government. *Id.*

In keeping with the Court's pronouncement in *Rothensies* that the doctrine is limited to the facts of the *Bull* and *Stone* decisions, courts have required the government to establish that (1) there is a sufficient identity of interest between the party seeking the refund and the party that should have been taxed but for the expiration of the statute of limitations and (2) the refund and time-barred tax claim arise out of the same transaction before they will apply the doctrine. *See Smith v. United States,* 373 F.2d 419, 421–23 (4th Cir.1966); *see also Stone,* 301 U.S. at 537–539, 57 S.Ct. at 853–55; *O'Brien,* 766 F.2d at 1050; *Kramer v. United States,* 406 F.2d 1363, 1371, 186 Ct.Cl. 684 (1969).

In addressing the first requirement, courts have found sufficient identity of interest present in cases involving "the sole beneficiary of an estate and the trustees of the estate, a husband's estate and a surviving spouse, a husband's estate and a wife's estate, the decedent and his estate, and an estate and all the beneficiaries of the estate." *O'Brien,* 766 F.2d at 1050 (citations omitted); *Kramer,* 406 F.2d at 1371 (holding equitable recoupment doctrine not applicable where not only life tenant/co-executor of estate would benefit from tax refund, but also remainderman would benefit).

In discussing the second requirement, the Court stated that "[i]t has never been thought to allow one transaction to be offset against another, but only to permit a transaction which is made subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole." *Rothensies,* 329 U.S. at 299, 67 S.Ct. at 272. However, the

> fact that a single tax determination may affect the taxes on two transactions does not convert the two transactions into a single one. If such inter-dependency of separate claims is sufficient to make them arise out of the same transaction, the doctrine of equitable recoupment would be significantly extended beyond the "limited scope" the Supreme Court accorded it in *Rothensies.*

*Wilmington Trust Co. v. United States,* 610 F.2d 703, 714, 221 Ct.Cl. 686 (1979).

### A. Identity of Interest

■ The government asserts that "there is an absolute identity of interest between

Plaintiff and Calcomp, and CDS" because (1) Calcomp acquired 100% of CDS's stock and liquidated CDS into Calcomp and (2) Lockheed acquired 100% of Calcomp's stock and liquidated Calcomp into Lockheed. Reply Brief in Support of Defendant's Motion for Judgment at 8–9. According to the government, "[t]he benefit from removing the subsidiary from Plaintiff's consolidated returns will inhere only to the Plaintiff. Likewise, any burden attendant on the United States' recoupment defense will be born only by the Plaintiff." *Id.* at 12.

The plaintiff counters that in all cases where the equitable recoupment doctrine has been invoked, there has been a complete identity of interest between the taxpayer in both the year barred from assessment by the statute of limitations and the later year where the government seeks to invoke the doctrine as a defense against a refund. In Lockheed's view, "it does not follow that, merely because plaintiff will receive some measure of the 'benefit' from CDS's failure to pay taxes, it therefore has always shared an identity of interest with CDS and should also bear the burden of the unpaid CDS taxes." Plaintiff's Further Reply Memorandum in Opposition to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment at 5. In support of this proposition, Lockheed points out that minority shareholders of CDS also benefited from not having to pay taxes.

The government has failed to meet its burden of establishing a sufficient identity of interest between Lockheed and the owners of CDS at the time CDS joined in Calcomp's consolidated return. The facts of this case are unlike those in *Stone* where the trustees maintained the trust only for the benefit of the sole beneficiary. There the Court held that the trustees and sole beneficiary were one in the same because any refund obtained by the trustees would inure to the sole beneficiary who escaped taxation. This case lacks a sufficient identity of interest as there were minority shareholders who also benefited from the consolidated return. These minority shareholders escaped having to pay tax on CDS's income. To ignore the minority shareholders and find a sufficient identity of

interest between the majority owners of CDS at the time they joined in the consolidated return and Lockheed in the present refund action would broaden the doctrine beyond the limited scope mandated by the Court in *Rothensies.*

### B. Common Transaction

The government contends that the plaintiff's claim for a refund and the government's defense of equitable recoupment arise out of the same transaction: the inclusion of CDS in the consolidated tax return. The government suggests that the plaintiff seeks "to include a subsidiary in a consolidated return so as to avoid paying tax on the subsidiary's income, and later erase the subsidiary's income from the same filed tax returns so as to permit [the plaintiff] additional loss deductions." Reply Brief in Support of Defendant's Motion for Judgment at 19.

The plaintiff responds that equitable recoupment is not applicable because the plaintiff's claim for a refund and the government's recoupment defense do not arise out of a common transaction. Rather, Lockheed asserts that there are "a myriad of separate taxable events in entirely different taxable years. Indeed, some of the refunds sought in this case are not even for taxes." Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment at 24.

Even if the court were to find that a sufficient identity of interest exists between Lockheed and the owners of CDS at the time CDS joined in Calcomp's consolidated return, the claim for refunds and for recoupment of tax do not arise out of the same transaction. The court agrees with the plaintiff's analogy to the tort principles of actual and proximate cause made during oral argument on the motion. While the plaintiff admits the refunds have their origin or actual cause in the filing of the consolidated tax return, the filing of the consolidated tax return is not the proximate cause of the refunds. There are superseding events giving rise to the refund claim, including freed-up tax credits, net operating loss carrybacks and carryforwards. The claim for refunds does not arise solely from the consequences of the removal of

CDS's income from the consolidated return and the exclusion of this income from taxation, but rather also arises from separate taxable events: the ability to utilize previous net operating loss deductions, credits and interest to offset income derived in other years.

Although the government may have suffered by not being able to tax CDS's income because of the expiration of the statute of limitations, the court is cognizant of the Supreme Court's warning to equity minded judges who seek to ameliorate hardships created by statutes of limitations. The Court in *Rothensies* carefully weighed and fully understood the implications of limiting the doctrine of equitable recoupment to the facts of *Bull* and *Stone*.

## II. Duty of Consistency or Quasi Estoppel

The government asserts that the plaintiff is bound by the duty of consistency or the doctrine of quasi estoppel to the form in which its predecessors elected to cast their business transactions. It therefore contends that the plaintiff cannot seek to remove CDS's income from the consolidated return. The plaintiff counters that this duty or doctrine is not applicable.

■■■ The duty of consistency or doctrine of quasi estoppel "prevents a taxpayer who has already had the advantage of a past misrepresentation—in a year now closed to review by the government—from changing his position and, by claiming he should have paid more tax before, avoiding the present tax." *Lewis v. Commissioner,* 18 F.3d 20, 26 (1st Cir.1994).[4] The elements of the duty of consistency are: (1) the taxpayer made a misstatement of fact and not law; (2) the government reasonably relied on the misstatement of fact "in the sense that it neither knew, nor ought to have known, the true nature of the transaction mischaracterized by the taxpayer"; and (3) the taxpayer attempted to recharacterize or alter the previous representation after the statute of limitations expired. *See id.; see also, Herrington v. Commissioner,* 854 F.2d 755, 758 (5th Cir. 1988), *cert. denied,* 490 U.S. 1065, 109 S.Ct. 2062, 104 L.Ed.2d 628 (1989); Jacob Mer-

tens, Jr., Mertens Law of Federal Income Taxation §§ 59.14, 60.05 (1993 and Supp. 1994).

■■■ The misstatement allegedly relied upon by the government was legal and not factual in nature. Both parties agree that CDS was not legally entitled to join Calcomp's consolidated return. Calcomp and CDS also agreed with the commissioner about the underlying facts concerning the amount of CDS stock. In its 1976 petition, Calcomp and CDS set forth the facts concerning the amount of stock, and the amount Calcomp owned. They asserted, albeit incorrectly, that under 26 U.S.C. § 1563 and tax regulations, certain stock owned by CDS's employees was excluded from the calculation of ownership for purposes of determining the appropriateness of joining in a consolidated return. On the basis of this flawed theory, Calcomp and CDS argued in their petition that they were entitled to file a consolidated return.

Moreover, the commissioner did not rely on the misstatement of the law. He specifically rejected Calcomp's and CDS's claim concerning Calcomp's ownership of CDS by filing a notice of deficiency, and denying in his answer to Calcomp's and CDS's petition their claim that consolidation was proper. The commissioner's rejection of Calcomp's and CDS's position all occurred within the statute of limitations. Calcomp and CDS did not mislead the government about the propriety of the consolidated tax return because the government refused to accept their assertion concerning the extent of ownership and pursued a timely, albeit defective, notice of deficiency. In sum, the facts of this case do not warrant an application of the duty of consistency because (1) the misstatement was legal and not factual in nature and (2) the commissioner did not rely on the misstatement.

## III. Judicial Estoppel

The government claims that the plaintiff is precluded by the doctrine of judicial estoppel from arguing to this court that consolidation was not proper when the plaintiff's predecessors advanced the opposite position before

---

4. In its decision, the First Circuit failed to address its prior rejection of this principle. *See*

*Ross v. Commissioner,* 169 F.2d 483, 494 (1st Cir.1948) (Frankfurter, Circuit Justice).

the Tax Court. The plaintiff contends that judicial estoppel is not applicable because CDS, Calcomp and the commissioner agreed as to the facts regarding Calcomp's ownership of CDS; they disagreed, however, as to the legal effect of those facts.

■ Judicial estoppel "precludes a party from asserting a position in one legal proceeding which is contrary to a position it has already asserted in another." *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir.1987). It is designed to protect the integrity of the judicial process. *Id.* at 214; *United States v. Levasseur*, 846 F.2d 786, 792 (1st Cir.), *cert. denied*, 488 U.S. 894, 109 S.Ct. 232, 102 L.Ed.2d 222 (1988). Under the majority view of this doctrine, " 'a party [who] assumes a certain position in a legal proceeding, and succeeds in maintaining that position ... may not thereafter, simply because his interests have changed, assume a contrary position.' " *Wang Lab., Inc. v. Applied Computer Sciences, Inc.*, 958 F.2d 355, 358 (Fed.Cir.1992) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895)); *Milgard Tempering, Inc. v. Selas Corp.*, 902 F.2d 703, 716 (9th Cir. 1990).

The First Circuit has employed a more liberal approach to judicial estoppel to curtail a litigant from "'playing fast and loose with the courts,'" and using "'intentional self-contradiction ... as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" *Patriot Cinemas, Inc.*, 834 F.2d at 212. (quoting *Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953)); *see also Milgard Tempering, Inc.*, 902 F.2d at 716–17 (observing First Circuit adopted minority view of doctrine). The party asserting judicial estoppel need not prove prejudice or harm by the inconsistent position. *Patriot Cinemas, Inc.*, 834 F.2d at 214.

The "classic" case where courts have utilized judicial estoppel occurs where "a litigant asserts inconsistent statements of fact or adopts inconsistent positions on combined questions of fact and law." *Id.* This doctrine has also been extended to situations "where a party declares an intention not to

pursue a claim." *Id.* (holding litigant who represented in state court that it would not pursue a certain state law claim against the defendant was judicially estopped from pursuing a contradictory position in federal court against that same defendant). Where only legal conclusions or opinions are involved, courts have refused to apply judicial estoppel. *Sturm v. Boker*, 150 U.S. 312, 334–37, 14 S.Ct. 99, 106–07, 37 L.Ed. 1093 (1893) (where facts equally known to both parties, bailee not estopped from asserting he was owner of goods in one suit and arguing others owned the goods in another); 1B James W. Moore *et al.*, MOORE'S FEDERAL PRACTICE ¶ .405[8] (2d ed. 1993) ("[I]n the absence of clear fraud the assertion of a legal conclusion or opinion will not result in preclusion."); *see also In re Corey*, 892 F.2d 829, 836 (9th Cir.1989) (doctrine of judicial estoppel not applicable where prior assertions based on fraud, inadvertence, or mistake) (citing *Konstantinidis v. Chen*, 626 F.2d 933, 939 (D.C.Cir.1980); *Johnson Serv. Co. v. Transamerica Ins. Co.*, 485 F.2d 164, 175 (5th Cir.1973)), *cert. denied*, 498 U.S. 815, 111 S.Ct. 56, 112 L.Ed.2d 31 (1990).[5]

In their 1976 petition for redetermination of the deficiency, Calcomp and CDS contended that

the Commissioner's application of the law and regulations with respect to whether the subsidiary was a member of the affiliated group is incorrect. Therefore, it is the contention of petitioners that a correct application of the law and the regulations will clearly show that the consolidations for the periods in question were proper.

Appendix B. The Sword letter was consistent with this erroneous legal interpretation. Before the Tax Court ruled on the issues raised in the petition, Calcomp and CDS filed an amended petition. While they no longer asserted that consolidation was proper, they did not dispute or alter their position as to the amount of CDS stock that Calcomp owned. Instead, they challenged the taxable years addressed in the notice of deficiency.

■ The plaintiff has not played fast and loose with the courts or even with the gov-

---

5. At least one circuit has questioned the reasoning for creating an exception to the application of judicial estoppel based on mistake, inadver-

tence, or fraud. *Teledyne Indus., Inc. v. N.L.R.B.*, 911 F.2d 1214, 1218 n. 4 (6th Cir.1990).

ernment. All the facts were known to both parties; they merely disagreed as to their legal import. The cases relied upon by the government are inapposite as they involve situations where a party either expressed an intention not to pursue an action in one proceeding and subsequently pursued the action or asserted inconsistent statements of *fact* in different proceedings. *See, e.g., Patriot Cinemas, Inc.,* 834 F.2d at 212–215 (holding party who stated it would not pursue claim in state court estopped from reasserting that claim in another forum); *Hurd v. DiMento & Sullivan,* 440 F.2d 1322, 1323 (1st Cir.) *(per curiam )* (holding party who asserted that attorneys unable to represent her in order to obtain a continuance in an action estopped from arguing in subsequent action against attorneys that they breached agreement to represent her), *cert. denied,* 404 U.S. 862, 92 S.Ct. 164, 30 L.Ed.2d 105 (1971); *Smith v. Boston Elevated Ry. Co.,* 184 F. 387, 388–90 (1st Cir.1911) (holding party who testified to circumstances surrounding her injury in one trial estopped from testifying to incongruous set of facts at second trial). The plaintiff has also not used intentional self-contradiction to gain an unfair advantage because the commissioner rejected Calcomp's and CDS's legal position as to the appropriateness of consolidation prior to the expiration of the statute of limitations and pursued a deficiency. *See Sturm,* 150 U.S. at 334–37, 14 S.Ct. at 106–07. The application of the doctrine of judicial estoppel is not appropriate to this case.[6]

### Conclusion

For the foregoing reasons, the court denies the United States' motion for summary judgment (document no. 13).

SO ORDERED.

---

**6.** Moreover, under the majority view, judicial estoppel is also inappropriate since the Tax Court did not need to determine in its 1983 or 1986 orders whether consolidation was proper. *Stevens Technical Servs., Inc. v. SS Brooklyn,* 885 F.2d 584, 588 (9th Cir.1989) (observing that a majority of courts utilizing the doctrine require that "the inconsistent assertion in the subsequent litigation was adopted in some manner by the court in the prior litigation.") The Tax Court did mention that CDS was not entitled to join in the filing of the Calcomp consolidated return; however, this is not dispositive because the Tax Court found that it lacked jurisdiction to determine the deficiency as the commissioner's notice of deficiency was defective.