ESTATE OF FIRMIN D. FUSZ, DECEASED, THE BOATMEN'S NATIONAL BANK OF ST. LOUIS AND CATHERINE C. FUSZ, CO-EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3622–64. Filed May 11, 1966.

*Darrell D. Wiles* and *Thomas P. Sweeney*, for the petitioners.
*Ronald M. Frykberg*, for the respondent.

TANNENWALD, *Judge:* Respondent determined a deficiency in estate tax in the amount of $5,577.34.

The only issue is whether the commuted value of payments required to be made to decedent's widow by his employer is includable in decedent's gross estate by reason of section 2039 of the Internal Revenue Code of 1954.

FINDINGS OF FACT

Some facts are stipulated and are found accordingly.

Firmin D. Fusz (hereinafter referred to as decedent), a resident of St. Louis County, Mo., died testate on May 14, 1960. Letters testamentary were issued on May 21, 1960, to his widow, Catherine C. Fusz, and Boatmen's National Bank of St. Louis as coexecutors of his estate (hereinafter referred to collectively as petitioner).

---

On or about May 16, 1955, decedent entered into an employment contract with Fusz-Schmelzle & Co., Inc. (hereinafter referred to as the company), a corporation engaged in the stock brokerage business and in which decedent, at all times pertinent, owned 500 shares out of a total of 1,540 shares issued and outstanding.

The term of the employment contract was May 1, 1955, to October 31, 1960, with automatic 5-year renewals unless either party gave prior notice of cancellation at the end of the then term. Under the contract, decedent was employed as executive vice president at a yearly salary of $18,000, payable monthly. In addition, as further consideration for decedent's services, provision was made that, in the event of decedent's death, the company would pay his wife, Catherine C. Fusz (who was specifically named in the contract), beginning with the first day of the month following death:

(a) $200 per month for her life, if decedent died during employment;

(b) $200 per month for her life, but not in excess of the number of months of decedent's employment, in the event that the contract was canceled at the end of any term.

No post-employment benefits were payable to decedent or anyone else under the contract or any other arrangements between decedent and the company.

When decedent died on May 14, 1960, he was employed by the company. Decedent's widow has continued to receive from the company the payments called for under the contract.

In his notice of deficiency, respondent determined that the commuted value of the payments was includable in decedent's gross estate as an annuity. The parties agreed that the commuted value is $38,731.57.

OPINION

In asserting includability in the estate of decedent of the commuted value of the payments to his widow, respondent has shot from his bow the single arrow of section 2039(a)[1]; he has deliberately left other possible arrows locked in his quiver.[2] Respondent contends that the salary which decedent was receiving at the time of his death consti-

---

[1] All references are to the Internal Revenue Code of 1954.
SEC. 2039. ANNUITIES.

(a) GENERAL.—The gross estate shall include the value of an *annuity or other payment* receivable by any beneficiary by reason of surviving the decedent under any form of contract or agreement entered into after March 3, 1931 (other than as insurance under policies on the life of the decedent), if, under such contract or agreement, an *annuity or other payment* was payable to the decedent, or the decedent possessed the right to receive such annuity or payment, either alone or in conjunction with another for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death. [Emphasis added.]

[2] Respondent expressly abjures any claim that other estate tax provisions may be applicable. While we are of course not bound by this action, we have determined under the circumstances of this case to confine our decision to sec. 2039 and consequently we express no opinion with respect to such other provisions.

tuted an "other payment" sufficient to bring section 2039 (a) into play. Petitioner asserts the contrary and reasons that, since decedent neither received nor was at any time entitled to receive from the company any payments other than his salary, section 2039 (a) is inapplicable.

The question is one of first impression.[3] Respondent's arrow misses the target. We hold for petitioner.

Section 2039 had no predecessor. It was inserted into the 1954 Code to clarify the law regarding includability in the gross estate of joint and survivor annuities, whether provided by the decedent's employer or financed by both the employer and the decedent. H. Rept. No. 1337, 83d Cong. 2d Sess., p. 90 (1954); compare *Garber's Estate* v. *Commissioner*, 271 F. 2d. 97 (C.A. 3, 1959), affirming a Memorandum Opinion of this Court, *Adeline S. Davis*, 27 T.C. 378 (1956); and *Estate of Albert B. King*, 20 T.C. 930 (1953), with *Commissioner* v. *Twogood's Estate*, 194 F. 2d 627 (C.A. 2, 1952), affirming 15 T.C. 989 (1950); *Higgs' Estate* v. *Commissioner*, 184 F. 2d 427 (C.A. 3, 1950), reversing 12 T.C. 280 (1949); *Hanner* v. *Glenn*, 111 F. Supp. 52 (D. Ky. 1953), affirmed per curiam 212 F. 2d 483 (C.A. 6, 1954); *Estate of William S. Miller*, 14 T.C. 657 (1950); *Estate of Eugene F. Saxton*, 12 T.C. 569 (1949); and *Estate of William L. Nevin*, 11 T.C. 59 (1948); see note, 66 Yale L.J. 1217, 1223 fn.22 (1957).

Neither section 2039, respondent's regulations thereunder, nor the legislative history of the section expressly delimits the qualitative scope of the term "other payment." The legislative history, however, does provide a clue to congressional purpose.

The report of the House Ways and Means Committee states:

With certain limitations, this section requires the inclusion in the decedent's gross estate of the value of an annuity or other payment receivable by any beneficiary by reason of surviving the decedent under any form of contract or agreement (other than as insurance under policies on the life of the decedent) entered into after March 3, 1931, *if under the contract or agreement an annuity or similar payment was payable to the decedent, or the decedent possessed the right to receive such annuity or payment,* either alone or in conjunction with another for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death. * * * [H. Rept. No. 1337, *supra* at A 314. Emphasis added.]

The Senate Finance Committee revised the section "to make it clear that the provisions of this section apply * * * also to contracts or agreements under which a lump-sum payment *was payable to the decedent or the decedent possessed the right to receive* such a lump-

---

[3] There have been only five cases construing sec. 2039(a), and all have been decided on the presence or absence of (1) a right in the *decedent* to receive payments after retirement or (2) a "contract or agreement" obligating the employer to make payments. *All* v. *McCobb*, 321 F. 2d 633 (C.A. 2, 1963); *Bahen's Estate* v. *United States*, 305 F. 2d 827 (Ct. Cl. 1962); *Estate of William F. Barr*, 40 T.C. 227 (1963), acq. 1964–1 C.B. 4; *Estate of Edward H. Wadewitz*, 39 T.C. 925 (1963,), affd. 339 F. 2d 980 (C.A. 7, 1964); *Estate of Wilmar Mason Allen*, 39 T.C. 817 (1963), acq. 1964–1 C.B. 4.

sum payment in lieu of an annuity." (Emphasis added.) S. Rept. No. 1622, 83d Cong., 2d Sess., p. 470 (1954).

The Conference Committee report further elaborates:

Amendment No. 269: This amendment amends section 2039 of the House bill by revising subsection (a) so as to make it clear that the provisions of section 2039 apply *not only to cases where an annuity was payable to a decedent but also to contracts or agreements under which a lump-sum payment is payable to the decedent or the decedent possesses the right to receive such a lump-sum payment* in lieu of an annuity. [H. Rept. No. 2543, 83d Cong., 2d Sess., p. 74 (1954). Emphasis added.]

Respondent seeks to overcome the apparent import of the foregoing legislative history by pointing to the following example of an includable item in the Senate Finance Committee report:

(4) A contract or agreement entered into by the decedent and his employer under which at decedent's death, prior to retirement or prior to the expiration of a stated period of time, an annuity or other payment was payable to a designated beneficiary if surviving the decedent. [S. Rept. No. 1622, *supra.*]

Since the example does not recite that the decedent was receiving or had a right to receive any amount other than his salary at the time of his death, respondent argues that "other payment" includes compensation for services being received by the decedent at the time of his death. *Ergo*, he concludes that section 2039 (a) is applicable to the payments to the widow herein.

Respondent's argument simply does not hold water.

First, it would require us to ascribe two different meanings to the term "annuity or other payment" in section 2039 (a), since it precedes both the phrase "receivable by any beneficiary" and the phrase "was payable to the decedent." Obviously, current compensation "payable to the decedent" cannot also be "receivable by any beneficiary." Respondent's construction would convert "an annuity or other payment was payable to the decedent" into "*any payment* was payable to the decedent," thereby completely vitiating the words "an annuity or other."

Second, respondent's regulations clearly provide for nonincludability in a situation where the decedent-employee had received at the time of his death all payments to which he was entitled. Sec. 20.2039–1(b), example 5, Income Tax Regs. If this is the touchstone, an absurd result would obtain under respondent's reasoning in the instant case. Should the employee perchance die on the last day of the pay period and after receiving his compensation for that period, such compensation would not, under respondent's reasoning, be considered an "other payment." But the situation would be otherwise if the employee died during a pay period or, to take the ridiculous case, on the last day of the pay period but before he had received the compensation.

The alchemy which respondent seeks to have us practice should be performed by the Congress. Neither logic nor legislative history supports a distinction so contrary to the unambiguous structuring of the "plain and ordinary language" of the statute and to the intent of Congress. See *Hanover Bank* v. *Commissioner*, 369 U.S. 672, 687 (1962).

It is clear that the Senate amendment was directed to the *manner* in which the payments were to be made rather than to the *nature* of such payments. Moreover, we think that example 4 in the report of the Senate Finance Committee, in juxtaposition with other statements in the report and the other five examples, necessarily implies that post-employment benefits payable to decedent during his lifetime were also involved. In any event, if perchance respondent's divining rod is the correct one, the underlying legislative policy, whether by accident or design, was not enacted into law.

We hold that the phrase "other payment" is qualitatively limited to post-employment benefits which, at the very least, are paid or payable during decedent's lifetime.[4] See *Estate of William E. Barr*, 40 T.C. 227, 237 (1963) ; *Bahen's Estate* v. *United States*, 305 F. 2d 827, 834 (Ct. Cl. 1962) ; Pincus, "Estate Taxation of Annuities and Other Payments," 44 Va. L. Rev. 857, 866–867 (1958) ; Bittker, "Estate and Gift Taxes Under the 1954 Code: The Principal Changes," 29 Tul. L. Rev. 453, 469, fn. 158 (1955) ; Garner, "Income and Estate Taxation of Annuities," 13th Ann. N.Y.U. Tax Inst. 265, 289 (1955) ; note, 10 U.C.L.A. L. Rev. 619, 627 (1963) ; cf. Lewis, The Estate Tax 68 fn. 22 (1960 ed.).

In order to reflect the agreement of the parties that petitioner is entitled to deductions for additional expenses of administration, including reasonable attorneys' fees incurred and paid in prosecuting this case,

*Decision will be entered under Rule 50.*

Reviewed by the Court.

---

MULRONEY, *J.*, dissenting: I respectfully dissent. As I read the majority opinion, section 2039(a) is interpreted as including annuities only when the decedent-employee was actually receiving or possessed the right, presumably at the time he died, to receive the annuity payments. This should give the law a rather limited application.

---

[4] We have deliberately refrained from deciding if such post-employment benefits must be actually paid or specifically payable to the decedent, e.g., whether there is a constructive payment or right to payment in the decedent within the intendment of sec. 2039(a) even though such post-employment benefits are irrevocably designated by contract to be paid to a third person during decedent's lifetime. Furthermore, there is the question whether other estate tax provisions would apply in such a situation. Cf. fn. 2, *supra*.

I do not think the limitation is in the statute. The most that can be said is that the language of the statute is ambiguous. It uses the phrase "an annuity or other payment" twice, once with respect to the beneficiary and once with respect to the decedent. The majority opinion resolves this ambiguity by interpreting the statute as if the second time it read "*the said* annuity or other payment."

In any event, the case seems to me so obviously within the very example (example 4) set forth in the legislative history, and quoted in the majority opinion, that I would construe the statute as including an annuity created by an employment contract even though decedent-employee had no right to annuity payments at the time he died.