**ESTATE OF Glen J. VAN WYE, and the Detroit Bank and Trust Company, a Michigan banking corporation, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 81–1020.**

United States Court of Appeals, Sixth Circuit.

Argued March 23, 1982.

Decided Aug. 23, 1982.

Richard A. Rossman, U. S. Atty., Detroit, Mich., John F. Murray, Michael L. Paup, David I. Pincus, Tax Division, Dept. of Justice, Washington, D. C., for defendant-appellant.

John J. Collins, Jr., Detroit, Mich., for plaintiffs-appellees.

Before KEITH and MERRITT, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

MERRITT, Circuit Judge.

The issue on appeal here appears to be precisely the same as the issue treated by Judge Friendly for the Second Circuit in *Schelberg v. Commissioner*, 612 F.2d 25 (2nd Cir. 1979): Whether survivor benefits payable by a company to its deceased employee's widow are taxable as part of the deceased employee's estate under section 2039(a)[1] of the Internal Revenue Code because the deceased employee during his lifetime had contingent, future rights to disability benefits while employed. We agree with the reasoning of the Second Circuit that the Commissioner's effort to read the disability benefit plan in tandem with the survivor benefit plan and thereby create an "annuity" covered by section 2039(a) is unreasonable; and we, therefore, affirm the judgment of the District Court that the survivor benefits are not includible in the decedent's gross estate.

Glen J. Van Wye, a management employee of Dana Corporation, died on September 28, 1974, survived by his wife. He was covered by several company benefit plans, including the following:

1. A retirement income plan "qualified" under section 401 of the Internal Revenue Code so that any survivor's benefits received thereunder are expressly excluded from the decedent's gross estate under section 2039(c).

2. A disability plan covering the Dana Corporation's employees who have worked for the corporation a full year. In order to qualify for disability benefits, an employee must first use up all sickness and accident benefits under separate plans providing for sickness and accident benefits for a period of 9½ months. Disability benefits are based on total, but not necessarily permanent, disability. An employee's case may receive an annual review to determine if disability benefits should continue. The disability benefits end upon death, termination of employment, return to work, or upon reaching the age of 65, at which time benefits begin under the retirement program.

3. Under the survivor income plan, the company pays benefits to any surviving spouse in the amount of one percent of the decedent's final monthly salary multiplied by the decedent's years of service with Dana.

Mr. Van Wye was receiving sickness and accident benefits at the time of his death in 1974 and had those benefits run out before

---

1. This reads in pertinent part as follows:

    § 2039. Annuities

    (a) General.—The gross estate shall include the value of an annuity or other payment receivable by any beneficiary by reason of surviving the decedent under any form of contract or agreement entered into after March 3, 1931 (other than as insurance under policies on the life of the decedent), if, under such contract or agreement, an annuity or other payment was payable to the decedent, or the decedent possessed the right to receive such annuity or payment, either alone or in conjunction with another for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death.

    (b) Amount includible.—Subsection (a) shall apply to only such part of the value of the annuity or other payment receivable under such contract or agreement as is proportionate to that part of the purchase price therefor contributed by the decedent. For purposes of this section, any contribution by the decedent's employer or former employer to the purchase price of such contract or agreement (whether or not to an employee's trust or fund forming part of a pension, annuity, retirement, bonus or profit sharing plan) shall be considered to be contributed by the decedent if made by reason of his employment.

    (c) Exemption of annuities under certain trusts and plans.—Notwithstanding the provisions of this section or of any provision of law, there shall be excluded from the gross estate the value of an annuity or other payment . . . receivable by any beneficiary (other than the executor) under—

    (1) an employees' trust (or under a contract purchased by an employees' trust) forming part of a pension, stock bonus, or profit-sharing plan which, at the time of the decedent's separation from employment (whether by death or otherwise), or at the time of termination of the plan if earlier, met the requirements of section 401(a) . . . .

his death, he would have been eligible to receive disability benefits. Mrs. Van Wye, after her husband's death, began receiving $615.05 per month under the survivor income plan. That amount was not included as part of the gross estate when the estate tax return was filed. The Commissioner determined that the commuted value of the monthly benefits under the survivor income plan was $68,504.85 and increased the decedent's estate by that amount. Accordingly, a deficiency of $8,496.73 was issued against the estate. The estate paid the deficiency plus interest and then brought an action in the District Court for a refund, claiming that the survivor income benefits were improperly included in the decedent's gross estate.

We need not tarry long with the question presented here for the *Schelberg* case, *supra*, as District Judge Cook concludes in his opinion below, is directly on point and appears to be clearly correct. In *Schelberg* an IBM management employee died on the job, and the company paid his widow survivor's benefits. The Commissioner argued that these benefits should be linked to the employee's right to receive disability benefits had he remained alive but sick, and the two characterized as an annuity under section 2039. In an opinion analyzing the purpose of section 2039, its legislative history and analogous cases in revenue rulings, Judge Friendly concludes:

> Courts have, consistent with basic principles of statutory construction, recognized that "annuity or other payment" [under section 2039(a)] does not mean "annuity or any payment," but that the phrase is qualitatively limited by the context in which it appears .... The Service itself has acquiesced in and furthered this view.

*See* Rev.Rul. 77–183, [1977–1 C.B. 274]. Thus, it seems clear to us that Congress did not intend the phrase to embrace wages ... possible sickness and accident payments, which were a substitute for wages, Rev.Rul. 77–183, *supra*; or the disability payments involved in this case, which likewise were a partial continuation of wages when an employee's physical health deteriorated even further. The disability payments theoretically achievable here by the decedent in his lifetime are closer to the sickness benefits which he would have received at an early stage of his illness than they are to post-retirement benefits.

612 F.2d at 31. *See also Estate of Siegel v. Commissioner*, 74 T.C. 613 (1980) (disability benefits not construed with survivor benefits as a single annuity under section 2039).

The Commissioner offers no arguments not considered and analyzed thoroughly and, we believe, correctly in the Second Circuit opinion.[2] Accordingly, we conclude that the Commissioner's treatment of possible disability benefits payable to Mr. Van Wye as linked to his widow's receipt of survivor benefits for purposes of section 2039(a) is unsupportable and we, therefore, affirm the judgment of the District Court.

---

**2.** The Commissioner relies heavily on *Bahen's Estate v. United States*, 305 F.2d 827 (Ct.Cl. 1962). The Deferred Compensation Plan construed as an annuity in *Bahen* is easily distinguishable from the disability plan before us. Under the Deferred Compensation Plan, the widow received 60 equal monthly installments if the employee died *before* or *after* retirement. The employee could receive the monthly installments himself if totally disabled before retirement, and payments would continue to his widow upon death. In the case before us, as in *Schelberg*, the widow had no rights to any payments under the disability plan. Further, the employee received benefits only if disabled *before* retirement, and payments ceased upon eligibility for retirement benefits.