Joyce B. LOONEY, Administratrix of the Estate of William J. Brown, deceased, Plaintiff,

v.

The UNITED STATES of America, Defendant.

Civ. A. No. 81–20–ATH.

United States District Court, M.D. Georgia, Athens Division.

Sept. 13, 1983.

Gary L. Pleger, Athens, Ga., John M. Vine, Washington, D.C., for plaintiff.

Lenore Distefano, Tax Div., Dept. of Justice, Washington, D.C., for defendant.

ORDER

OWENS, Chief Judge.

This is a civil action for a refund of estate taxes paid by plaintiff, Joyce B. Looney, as Executrix of the Estate of William J. Brown. At issue is whether survivor benefits payable by a company to its deceased employee's widow are taxable under section 2039(a) of the Internal Revenue Code as part of the deceased employee's estate because the deceased employee during his lifetime had contingent, future rights to disability benefits while employed.

Presently before the court are the parties' cross-motions for summary judgment. The parties having agreed upon a stipula-

tion of facts and the issue being one of law under the Internal Revenue Code, the court now finds and concludes the following:

### Findings of Undisputed Material Fact

Decedent William J. Brown died on January 8, 1979. He was survived by his wife, Reta, and daughter, Elizabeth. He had been employed continuously since 1953 by International Business Machines Corporation (IBM); at the time of his death he was employed as a systems engineer at a salary of $2,810.00 per month.

At decedent's death and at all other times relevant to this action, IBM maintained a variety of employee benefit plans, each adopted at a different time and separately administered. Those pertinent to this action are the Group Life Insurance and Survivors Income Benefit Plan (Survivor Benefits Plan), the Retirement Plan, the Sickness and Accident Income Plan (Sickness and Accident Plan), and the Total and Permanent Disability Income Plan (Disability Plan). Each plan was noncontributory with the exception of the Retirement Plan which permitted employee contributions in certain limited circumstances. IBM shouldered the entire cost of all of the benefits under each plan.

The Survivor Benefits Plan provided two basic benefits: a group term life insurance benefit (not here at issue) and an uninsured and unfunded survivors income benefit. The survivors income benefit was payable only to an employee's "eligible survivors," as defined by the plan. The total amount of the survivors income benefit was equal to three times the employee's regular annual compensation. Payment was made monthly at the rate of one-fourth of the employee's regular monthly compensation, until either the total benefit had been exhausted or there were no remaining "eligible survivors," whichever occurred first.

The Retirement Plan, a qualified pension plan under section 401(a) of the Internal Revenue Code, provided benefits to all employees who retired at age 65 with at least one year of service with IBM.

The Sickness and Accident Plan entitled all employees who were unable to work due to sickness or accident to receive full salary (reduced by any workmen's compensation payments) for a maximum of 52 weeks in any 24-month period. At IBM's discretion, benefits could be extended beyond 52 weeks in individual cases. These extended benefits were known as "individual consideration" benefits.

The Disability Plan covered all regular IBM employees who became totally and permanently disabled after having been employed by IBM for at least five years. In order to be considered totally and permanently disabled under the plan, an employee had to be unable to perform any employment for pay or profit and had to have no reasonable expectation of doing so in the future.

Disability benefits commenced only after a totally and permanently disabled employee had received benefits for at least 52 weeks under the Sickness and Accident Plan, plus any additional period of individual consideration benefits. The benefits were calculated on the basis of the employee's regular compensation prior to disability, taking into account any eligibility for Social Security benefits and workmen's compensation. The benefits continued until the employee either reached age 65 or recovered from his disability. If the employee reached age 65, the disability benefit ceased and he became eligible to retire and receive benefits under the Retirement Plan.

During an employee's period of disability, he remained covered by a variety of the plans making up IBM's benefit program (i.e., the medical plans, the Survivor Benefits Plan, the Adoption Assistance Plan, and the Special Care for Children Plan). As of January 1, 1979, 809 of IBM's 190,000 employees were receiving disability benefits.

At the time of his death (at age 57), decedent had not received any payments under the Retirement Plan, Sickness and Accident Plan, or the Disability Plan. Furthermore, after his death, neither his estate nor any beneficiary received any payments from IBM under the Sickness and Accident Plan or the Disability Plan.

As a result of his death, decedent's surviving spouse, Reta, was entitled to and

received payments of $411.24 per month under the Pre-Retirement Spouse Option benefit provided under the Retirement Plan. Furthermore, under the Survivor Benefits Plan, she received a group-term life insurance benefit of $50,000.00 in respect of decedent and is presently receiving $702.50 per month in survivors income benefit payments. The present value of the survivors income benefit on decedent's date of death was $72,626.07.

Plaintiff included the then present value of the survivors income benefit in decedent's gross estate which resulted in her paying $3,593.44 in estate taxes. Subsequently, on February 21, 1980, plaintiff filed a timely claim for refund with the Internal Revenue Service alleging that the recent decision of the United States Court of Appeals for the Second Circuit in *Estate of Schelberg v. Commissioner,* 612 F.2d 25 (1979), indicated that the present value of the survivors income benefit should not have been included in decedent's gross estate and thus she had erroneously paid $3,593.44 in estate taxes.

On October 1, 1980, the Internal Revenue Service notified plaintiff of its intention to disallow her claim for refund. Thereafter, on or about October 30, 1980, plaintiff filed a "Waiver of Statutory Notification of Claim Disallowance" with the Internal Revenue Service, thereby entitling her to bring this action for refund in this United States District Court.

### Conclusions of Law

As stated earlier, the only issue to be decided is whether the present value of the survivors income benefit is properly includible in decedent's gross estate pursuant to section 2039(a) of the Internal Revenue Code. If so, decedent's estate is not entitled to any refund of estate taxes or interest thereon. If not, decedent's estate is entitled to a refund of $3,593.44 plus interest and costs as allowed by law.

In applying section 2039 to the undisputed facts of this case, this court does not presume to pass judgment upon the merits of the code section (*i.e.,* whether it is fair or equitable to the taxpayer or his estate, or

whether its application produces a result "at war with common sense"). This court is concerned only with the proper application of section 2039, decided in the light of the basic purpose of the estate tax scheme, the intent of Congress in enacting section 2039, the pertinent Treasury Regulations, and the applicable case law.

■ The court in *Broderick v. Keefe,* 112 F.2d 293 (1st Cir.1940) pointed out that the basic purpose of the estate tax "is to bring within the gross estate of the transferor that which he gave 'upon a contingency terminable at his death.'" *Id.* at 296. In other words, the estate tax is an excise imposed upon the individual's privilege to transfer property at his death, based upon its value. *See, United States Trust Co. v. Helvering,* 307 U.S. 57, 59 S.Ct. 692, 83 L.Ed. 1104 (1939).

When section 2039 was enacted by Congress in 1954, it was new and did not correspond to any prior provision of existing law. S.Rep. No. 1622, 83rd Cong., 2d Sess., *reprinted in* [1954] U.S.Code Cong. & Ad. News 4621, 4756–57, 5113–15; H.R.Rep. No. 1337, 83rd Cong., 2d Sess., *reprinted in* [1954] U.S.Code Cong. & Ad.News 4017, 4117, 4457–59. The intent of Congress in enacting section 2039 was to clarify existing law as to whether a joint and survivor annuity purchased by a decedent's employer, or an annuity to which both the decedent and his employer made contributions, was includible in the decedent's gross estate. *Id.* The broad language chosen by Congress in framing section 2039 suggests, however, that it was intended to encompass more than joint and survivor annuities only.

■ 26 U.S.C.A. § 2039 provides in pertinent part that:

"(a) General.—The gross estate shall include the value of an annuity or other payment receivable by any beneficiary by reason of surviving the decedent under any form of contract or agreement entered into after March 3, 1931 (other than as insurance under policies on the life of the decedent), if, under such contract or agreement, an annuity or other payment was payable to the decedent, or the decedent possessed the right to receive such

annuity or payment, either alone or in conjunction with another for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death.

(b) Amount includible.—Subsection (a) shall apply to only such part of the value of the annuity or other payment receivable under such contract or agreement as is proportionate to that part of the purchase price therefor contributed by the decedent. For purposes of this section, any contribution by the decedent's employer or former employer to the purchase price of such contract or agreement (whether or not to an employee's trust or fund forming part of a pension, annuity, retirement, bonus or profit sharing plan) shall be considered to be contributed by the decedent if made by reason of his employment." [1]

In order for section 2039 to require inclusion in decedent's gross estate of the present value of survivor benefits payable to his wife, the following requirements must be met: (1) there must be an "annuity or other payment;" (2) receivable by any beneficiary; (3) by reason of surviving the decedent; (4) under any form of contract or agreement entered into after March 3, 1931 —other than as insurance under policies on the life of the decedent. Plaintiff fully admits that the survivors income benefit satisfies these four requirements of section 2039.

The parties' dispute is centered around whether the fifth requirement of the statute has been met. The fifth requirement can be met by satisfying either of two conditions. Condition A is satisfied if under the contract or agreement, "an annuity or other payment was payable to the decedent . . . ." Condition B is satisfied if under the contract or agreement, "the decedent possessed the right to receive such annuity or payment, either alone or in conjunction with another for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death."

Defendant does not contend that condition A is satisfied under the facts of this case. Instead, defendant urges that condition B is satisfied in that decedent possessed, for a period not in fact ending before his death, the right to receive (upon the occurrence of a certain condition) an annuity or other payment under IBM's Disability Plan.[2]

Plaintiff, on the other hand, urges that for purposes of section 2039(a): (1) the Disability Plan should not be grouped with the Survivor Benefits Plan to form a single "contract or agreement;" (2) the benefit provided under the Disability Plan does not qualify as an "annuity or other payment;" (3) the decedent had no "right" to a benefit under the Disability Plan at the time of his death; and (4) to include the survivors income benefit in decedent's gross estate because of coverage under the Disability Plan would be unreasonable.

I. Whether it is appropriate to group the Survivor Benefits Plan with the Disability Plan for purposes of applying section 2039?

Defendant urges that given the facts of this case it is entirely reasonable to consider

---

1. Parts (c), (d), and (e) of section 2039 pertain to exemption of annuities under certain trusts and plans, exemption of certain annuity interests created by community property laws, and exclusion of individual retirement accounts, etc., respectively.

Parts (f) and (g) of section 2039 deal with lump sum distributions, and set forth a $100,000 limitation on exclusions under subsections (c) and (e), respectively.

2. Defendant must rely on decedent's coverage under the Disability Plan because reliance upon the Retirement Plan or the Sickness and Accident Plan is plainly foreclosed by Revenue Rul-

ings 76–380, 1976–2 C.B. 270 and 77–183, 1977–1 C.B. 274.

Revenue Ruling 76–380, 1976–2 C.B. 270 provides that a qualified pension plan (such as the Retirement Plan) cannot be considered together with a nonqualified survivors income plan (such as the Survivor Benefits Plan) in order to apply section 2039(a).

Revenue Ruling 77–183, 1977–1 C.B. 274 provides that sickness and accident benefits (such as those provided under the Sickness and Accident Plan) are in the nature of compensation and are not "an annuity or other payment" for purposes of section 2039(a).

the Survivor Benefits Plan and the Disability Plan as component parts of a united company employee benefit plan. This court must agree.

The applicable Treasury Regulation (found at 26 C.F.R. § 20.2039–1(b)(ii) (1982)) defines the term "contract or agreement" to mean "any arrangement, understanding or plan, or *any combination of arrangements, understandings or plans arising by reason of the decedent's employment.*" Id. (emphasis added). The regulation further provides that:

"*All rights and benefits accruing to an employee and to others by reason of the employment* (except rights and benefits accruing under certain plans meeting the requirements of section 401(a) (see § 20.-2039–2)) *are considered together in determining whether or not section 2039(a) and (b) applies.* The scope of section 2039(a) and (b) cannot be limited by indirection." 26 C.F.R. § 20.2039–1(b)(2) Example (6) (1982). (emphasis added).

Given the all encompassing nature of IBM's benefits program and the explicit direction of the applicable Treasury Regulations, this court finds it to be entirely appropriate to group together the Survivor Benefits Plan and the Disability Plan in order to form a "contract or agreement" in considering whether section 2039(a) and (b) applies. *See, Bahen's Estate v. United States,* 305 F.2d 827, 834–35, 158 Ct.Cl. 141 (1962). *See also, Estate of Schelberg v. Commissioner,* 612 F.2d 25, 28 (2d Cir.1979) (in which the court reluctantly agreed that the Commissioner was entitled to consider separate plans together in determining the applicability of section 2039).

II. Whether the benefit provided under the Disability Plan qualifies as an "annuity or other payment?"

Plaintiff urges that the benefit provided under the Disability Plan does not qualify as an "annuity or other payment." Specifically, plaintiff contends that: (1) section 2039 applies only to joint and survivor annuities; and (2) that payments received under the Disability Plan are closely akin to wage continuation payments which are not an "annuity or other payment" under section 2039.

Admittedly the legislative history of section 2039 indicates that the main impetus for the new section was to make clear that a joint and survivor annuity purchased by a decedent's employer, or an annuity to which both the decedent and his employer made contributions, was includible in the decedent's gross estate. Nevertheless, it remains the opinion of this court as hereinbefore set forth in this order that the broad language chosen by Congress in enacting section 2039 strongly suggests that it was intended to cover more than just joint and survivor annuities.[3] Plaintiff's contention to the contrary is without merit.

The applicable Treasury Regulation defines "annuity or other payment" to be "one or more payments extending over any period of time. The payments may be equal or unequal, conditional or unconditional, periodic or sporadic." 26 C.F.R. § 20.2039–1(b)(ii) (1982). One key limitation which has been placed upon the broad language of this definition, however, is that an employee's regular salary payments have been held to fall outside the definition for purposes of section 2039. *See, Bahen's Estate, supra,* at 834 n. 14.

Relying upon this limitation plaintiff urges that payments received under the Disability Plan are directly analogous to wage continuation payments received under the Sickness and Accident Plan (which cannot be considered in determining the applicability of section 2039) and likewise cannot be considered in satisfying the requirements of section 2039. This court cannot agree.

---

**3.** Accordingly, plaintiff's contention that section 2039 does not apply to payments (such as disability payments) which cannot be received by a beneficiary is incorrect. The survivorship aspect of the disability payments is of little, if any, substantive importance in determining whether such payments constitute an "annuity or other payment." *See, Estate of Beal v. Commissioner,* 47 T.C. 269, 272 (1966).

The problem with plaintiff's argument is that it overlooks the critical difference between payments received under the Sickness and Accident Plan as opposed to payments received under the Disability Plan. When an IBM employee receives benefit payments under the Sickness and Accident Plan, it is assumed that at some point in the near future he will be able to return to active employment. On the other hand, before an IBM employee is eligible for benefits under the Disability Plan, he must be found to be totally and permanently disabled—unable to perform any employment for profit and without reasonable expectation of ever becoming able to do so. Under these circumstances, this court has no reservations in characterizing payments under IBM's Disability Plan as "post-employment" benefits constituting an "annuity or other payment" under the provisions of section 2039. Indeed, such a result is required by what this court considers to be the more persuasive case law. *See, Bahen's Estate, supra.*[4]

III. Whether the decedent had a "right" to a benefit under the Disability Plan at the time of his death?

Plaintiff urges that since no benefit was payable to the decedent under the Disability Plan at the time of his death, section 2039 is inapplicable because the decedent also had no "right" to an annuity or other payment under the plan at the time of his death. This court cannot agree.

The applicable Treasury Regulation provides that:

"The decedent 'possessed the right to receive' an annuity or other payment if, immediately before his death, the decedent had an enforceable right to receive payments at some time in the future, whether or not, at the time of his death, he had a present right to receive pay-

ments. In connection with the preceding sentence, the decedent will be regarded as having had 'an enforceable right to receive payments at some time in the future' so long as he had complied with his obligations under the contract or agreement up to the time of his death." 26 C.R.F. § 20.2039–1(b)(ii) (1982).

Furthermore, as was stated previously herein, the regulations provide that the payments making up "an annuity or other payment" may be "equal or unequal, *conditional or unconditional,* periodic or sporadic." *Id.*

Plaintiff, relying principally upon *Estate of Schelberg, supra,* argues that decedent's "extremely hypothetical" possibility of receiving payments under the Disability Plan does not satisfy the requirement of section 2039 that he have a "right" to receive a benefit under the plan. Instead, plaintiff argues that decedent had merely the *possibility* of obtaining a right, in the future, to claim a benefit under the Disability Plan should he ever incur a total and permanent disability that prevented him from engaging in employment.

Under the terms of IBM's Disability Plan, any employee who became totally and permanently disabled after having been employed by IBM for at least five years had an enforceable right to receive benefit payments under the Disability Plan. Accordingly, upon commencing his sixth year with IBM decedent had an enforceable right to receive disability benefits should he have become totally and permanently disabled. The regulations and the more persuasive case law make clear that decedent's interest in receiving disability benefits, contingent upon his becoming totally and permanently disabled, is sufficient to give him the "right" to receive such benefits at the time of his death. *See, Bahen's Estate, supra,* at 831. Accordingly, decedent had at the time of his death the "right to receive" disability

---

4. With all respect due the United States Court of Appeals for the Second Circuit, this court finds its reasoning in *Estate of Schelberg v. Commissioner,* 612 F.2d 25 (1979), in which it found payments under the Disability Plan to be more closely akin to sickness benefits, to be unpersuasive. That court is correct in that an

employee receiving disability benefits is not technically "retired," however, the court fails to consider the fact that since the employee has no reasonable expectation of ever again being able to work, he is for all *practical* purposes "retired."

payments within the meaning of section 2039.

IV. Whether inclusion of the survivors income benefit in decedent's gross estate because of coverage under the Disability Plan is unreasonable?

Plaintiff urges that to include the survivors income benefit in decedent's gross estate because of coverage under the Disability Plan is unreasonable. Since the court has herein determined that the inclusion of the present value of the survivors income benefit in decedent's gross estate pursuant to section 2039 is proper in the light of the basic purpose behind the estate tax, the legislative history behind section 2039, the applicable regulations, and the more persuasive case law, the court declines to address any issue as to reasonableness of the results obtained from a proper application of the statutory provisions.

### Conclusion

For those reasons hereinbefore stated, it is the considered opinion of this court that defendant's motion for summary judgment must be GRANTED.